UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE BRANUM,

      Plaintiff,

v.                                                                 Case No. 05-72983

DAVID GRONDIN, THE CITY                      HONORABLE AVERN COHN
OF SOUTHGATE

      Defendants.

_____/

**MEMORANDUM AND ORDER DENYING THE CITY OF SOUTHGATE'S MOTION TO
DISMISS OR FOR SUMMARY JUDGMENT**

**I.  Introduction**

This is a case under 42 U.S.C. § 1983.  Plaintiff Christine Branum (Branum) is

suing Southgate police officer David Grondin (Grondin) and the City of Southgate[1] (the

City) for events stemming from an incident at her home involving Grondin.

Before the Court is the City of Southgate's motion to dismiss or in the alternative

for summary judgment.  For the reasons that follow, the motion is DENIED.

**II.  Background**

The City submitted the following "Statement of Material Facts Not in Dispute:"

> City of Southgate police officers responded to a domestic violence
> call at plaintiff's residence on October 1, 2004.  Plaintiff alleges Officer
> David Grondin exhibited unacceptable and/or unreasonable force during
> the course of his interaction with plaintiff at her residence.  On February
> 11, 10025, the City issued a discipline to Officer Grondin regarding his

---

[1]Branum also sued Dennis David, the Mayor of Southgate.  David then filed a
motion to dismiss.  Branum agreed to dismiss David without prejudice before the Court
could rule on David's motion.

alleged conduct.

This statement, while not inaccurate, is incomplete for purposes of decision on a motion for summary judgment.

The material facts as gleaned from the parties' papers follow.[2]

On October 1, 2004, City police officers Grondin, Kalaska, and Cassette responded to a domestic violence call at Branum's home.  Apparently, an argument erupted between Branum's boyfriend and her daughter's boyfriend which resulted in the daughter's boyfriend being chased off the property.  The officers spoke with Branum, her boyfriend, and her daughter outside the home; Branum's boyfriend returned to the inside of the home during this time.  Branum told the officers that the situation had resolved itself and none of the parties wanted to pursue criminal charges.  However, according to Branum,  Grondin refused to leave the property, stating he wanted to speak with her boyfriend.  Branum told him he did not have permission to enter her home.  Branum then says that Grondin used excessive force against her to gain entry to her home.

On October 7, 2004, Branum filed a citizens complaint against Grondin.  The City's police department began an internal investigation which apparently included videotape interviews with Kalaska and Cassette who allegedly stated that Grondin was not fit for duty.  Grondin was on "departmental probationary status" at the time of the

---

[2]The factual background is gleaned from the parties' papers.  The City filed a statement of material facts not in dispute which consists only of the single statement set forth above.  Branum did not file a counter-statement.  Neither party highlighted relevant portions of the exhibits.  Although the City submitted copies of relevant cases, the important passages were not highlighted.

incident because of a no contest plea to charges of domestic violence and assault and battery.  The Michigan State Police also undertook a criminal investigation of the matter, but ultimately recommended no charges be filed.

On December 10, 2004, City Chief of Police Lawrence Hall wrote to the Wayne County Prosecutor's office, enclosing the videotapes and requesting a review of the matter.  On January 25, 2005, the Wayne County Prosecutor's Office notified Hall that no criminal charges would be filed due to lack of sufficient evidence.

In late December, following the internal investigation, the Southgate Police Department issued a proposed notice of termination to Grondin.  The notice was the subject of a Public Safety Commission (Commission) meeting on February 9, 2005. The Commission, however, declined to adopt the Police Department's recommendation to terminate Grondin and instead recommended that he receive training.

On February 10, 2004, Hall wrote to the Mayor of Southgate, expressing his disagreement and disappointment with the Commission's decision, noting that the Commission did not review the videotapes and pointing out other perceived shortfalls in the decisionmaking process.

On February 11, 2005, the Mayor of Southgate wrote Grondin, noting the Police Department's recommendation for termination and the Commission's decision for training.  The Mayer, however, declined to adopt either recommendation and instead issued Grondin a five day suspension (on days of his choosing) without pay.[3]

On February 14, 2005, Hall wrote the Mayer expressing his "formal objection to

---

[3]This appears to be a rather extraordinary response to the Police Department's recommendation and the Commission's follow-up recommendation.

3

your action in this matter" and explaining his belief that the discipline was no more than a "wrist slapping."

On August 1, 2005, Branum filed her complaint against Grondin, the Mayor (later dismissed) and the City for violations under § 1983.  The City then filed the instant motion to dismiss or for summary judgment on the grounds that Branum has not and cannot make out a claim for municipal liability under § 1983 because the City investigated the matter and disciplined Grondin.

### III.  Legal Standards

#### A.  Motion to Dismiss

When analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must take a plaintiff's well-pleaded allegations as true.  Miree v. DeKalb County, 433 U.S. 25, 27 n.1 (1977).  "[W]hen an allegation is capable of more than one inference, it must be construed in the plaintiff's favor."  Sinay v. Lawson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991).  "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

#### B.  Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party."  Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).  As another United

5

States District Court Judge has observed:

> [T]he mere existence of a dispute over ultimate facts to be inferred does not preclude summary judgment.  In that situation, the court, instead of automatically denying the motion, must decide the legal question whether the dispute is genuine, i.e. whether an inference adverse to the moving party is sufficiently plausible that it could reasonably be drawn by a jury.

William W. Schwarzer, "Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact," 99 F.R.D. 465, 487 (West 1983).

## IV.  Analysis

As an initial matter, it appears that because discovery is ongoing, the instant motion is more properly viewed under Rule 12(b) standards.  This is so even though both parties submitted exhibits outside of the pleadings, which the Court has considered as part of its decision.

### A.  Federal Claim Under 42 U.S.C. § 1983[4]

Section 1983 on its own creates no substantive rights; rather, it is a vehicle by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  "To successfully establish a claim under § 1983, a claimant must show that he or she was deprived of a right secured by the Constitution and the laws of the United States by one

_____

[4] Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

acting under the color of law." <u>Ahlers v. Schebil</u>, 188 F.3d 365 (6th Cir. 1999) (internal citations omitted).

### B.  Municipal Liability Under § 1983

#### 1.  Legal Standard

A political subdivision is liable under § 1983 if its official policies or informal customs cause constitutional violations.  <u>Heflin v. Stewart County, Tennessee</u>, 958 F.2d 709, 716 (6th Cir. 1992).  A governmental entity may have liability for the same actions for which public officials enjoy qualified immunity.  <u>Barber v. City of Salem, Ohio</u>, 953 F.2d 232, 237-38 (6th Cir. 1992).

In order to state a claim against a municipality under § 1983, a plaintiff must show that the municipality, through a policy or custom, caused the alleged constitutional violation.  <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  A municipality cannot be vicariously liable under § 1983 for a constitutional violation caused by its employees or agents.  <u>Id.</u> at 694, 98 S. Ct. at 2037.  Rather, a municipality can be liable under § 1983 when a government's custom is "so permanent and well settled as to constitute a custom or usage with the force of law," <u>Davenport v. Simmons</u>, 192 F. Supp. 2d 812, 824 (W.D. Tenn. 2001), or when the government's official policy is the "moving force of the constitutional violation." <u>Monell</u> at 694, 98 S. Ct. at 2037-38.  <u>See also</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d. 452 ("municipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives. . . .").

In order to show the existence of a policy or custom for purposes of municipal

7

liability under § 1983, the plaintiff must plead specific facts in support of the claim; the

plaintiff may not merely state conclusory allegations. Culberson v. Doan, 125 F. Supp.

2d 252, 263-64 (S.D. Ohio 2000).

## 2.  Application

Branum's complaint contains the following allegations of fact against the City:

85.   The Individual Defendant [Grondin] frequently and persistently harassed citizens, acted unprofessionally, used coarse and vulgar language against citizens, and used excessive physical force against citizens, among other violations of Constitutional rights not listed herein.

86.   The Defendant City of Southgate had actual and/or constructive knowledge of this various Constitutional violations imposed by Defendant Grondin against Southgate citizens, and had actually imposed a probationary period against this Defendant after he pled to criminal charged on a similar incident.

87.   The Defendant City of Southgate, through its Mayor and other officials implicitly and/or explicitly condoned Defendant Grondin's behavior, thereby instituting an official unwritten policy.

88.   Defendant City of Southgate practiced and/or permitted customs and/or policies and practices that the Defendant officer and other personnel acted in conformity with and that were the moving force behind the violation of Plaintiff's constitutional rights.

89.   These customs and/or policies included, but were not limited to:
   a.   Failing to supervise its officers to prevent the violations of citizens' constitutional rights.
   b.   Failing to adequately train or supervise officers regarding the proper use of force;
   c.   Failure to train its officers in the proper methods of obtaining a search warrant, or establishing probable cause prior to entering a free citizens' home;
   d.   Failing to control of discipline officers known to harass, intimidate, and/or abuse citizens;
   e.   Failing to require compliance of its officers and/or employees with established written policies and/or rules fo the City and discipline or reprimand officers who violate the established policies; and
   f.   Failing to protect citizens from unprovoked attacks by correctional officers.

90.   Acting with deliberate indifference to the obvious and/or known risk posed by Defendant Grondin and other personnel acting in conformity with the aforementioned policies, Defendants practiced and/or permitted customs and/or policies and practices that resulted in the violations of Plaintiff's

Constitutional rights complained herein.

91.    The Mayor for Defendant City of Southgate, as policy maker for the City, also expressly and/or tacitly ratified, authorized and/or condoned Defendant Grondin's use of excessive physical force against the Plaintiff and his failure to follow the proper procedure in searching a person's home...by failing to impose any substantive discipline against [Grondin]...

92.    The Mayor and other policymakers for the Defendant City of Southgate further ratified Defendant Grondin's conduct by ignoring the substantial evidence against the Defendant and predetermining the discipline he would receive...

93.    The Defendant City of Southgate restored Defendant Grondin to active duty after only five days, even knowing that he habitually and intentionally violated citizens' Constitutional rights.

The City says Branum has not made out such a claim because the record shows that it has policies regarding the use of force and points out that Grondin was investigated and disciplined as a result of his actions.  The fact that Grondin was penalized as a consequence of his actions ignores the underlying thrust of Branum's § 1983 claim.  To the contrary, based on a review of the complaint and the exhibits, Branum has stated a claim against the City.  That is, that the City's implementation of its policies regarding excessive force are constitutionally flawed that it customarily ignores the mandate of the Constitution.  As the Court reads the complaint, Branum alleges that the City, though the Commission and the Mayor, have a policy and custom of not adequately or meaningfully investigating excessive force complaints and not imposing meaningful discipline on police officers, particularly after the Police Department recommends that the police offer be terminated.

In other words, Branum takes issue with the City's execution of its policies regarding excessive force which she says has resulted in an informal custom of essentially tolerating the use of excessive force resulting in the deprivation of constitutional rights.  Notably, Branum alleges, in the complaint and in her papers, that

9

the treatment of Grondin was not an isolated incident; other police officers have been

disciplined by the Commission and Mayor less harshly than the Police Department

recommended.  Additionally, the allegations, fairly read, state that the Mayor

customarily waters down the Commission recommendation.  Under these

circumstances, the City cannot avoid liability at this stage in the case by simply relying

on the fact that the police officer involved was investigated and punished.  It is the form

of punishment ultimately taken that raises the constitutional question.

        SO ORDERED.


                                 s/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE


Dated:  March 29, 2006


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, March 29, 2006, by electronic and/or ordinary mail.


                                 s/Julie Owens
                                Case Manager
                                (313) 234-5160


10