UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE BRANUM,

      Plaintiff,

v.                                                                    Case No. 05-72983

DAVID GRONDIN, THE CITY                       HONORABLE AVERN COHN
OF SOUTHGATE

      Defendants.

_____/

## MEMORANDUM AND ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT

### I. Introduction

This is a case under 42 U.S.C. § 1983. Plaintiff Christine Branum (Branum) is suing Southgate police officer David Grondin (Grondin) and the City of Southgate[1] (the City) for events stemming from an incident at her home involving Grondin.

Before the Court are the parties cross motions for summary judgment, as follows:

•    The City of Southgate's motion for summary judgment

•    Grondin's motion for summary judgment

•    Branum's motion for summary judgment

For the reasons that follow, the motions are DENIED.

---

[1]Branum also sued Dennis David, the Mayor of Southgate. David then filed a motion to dismiss. Branum agreed to dismiss David without prejudice before the Court could rule on David's motion.

## II. Background[2]

The material facts as gleaned from the parties' papers follow:[3]

On October 1, 2004, Southgate City police officers Grondin, Todd Kalaska (Kalaska), and Christopher Cassette (Cassette) responded to a call from one of Branum's neighbors regarding a fight at Branum's home. Apparently, an argument had erupted between Branum's boyfriend, Ron Egnatowski (Egnatowski) and her daughter's boyfriend Jake Schmidt (Schmidt). Branum's daughter also called 911 and reported that Egnatowski was waving a stick at Schmidt. The officers spoke with Branum, her daughter, and Schmidt; Egnatowski returned inside the home during this time. Branum told the officers that the situation had resolved itself and none of the parties wanted to pursue any criminal charges. However, according to Branum, Grondin refused to leave, stating he wanted to speak with Egnatowski. Branum says she told Grondin that he did not have permission to enter her home. Branum then says that Grondin used excessive force against her to gain entry to her home. Grondin admits he attempted to speak with Egnatowski and get him to come out of the house but that Branum was blocking his way. He also admits that he delivered two open palm chest strikes and a knee strike to Branum in order to prevent her from interfering with his efforts to enter her home. Egnatowski eventually exited the house.

On October 7, 2004, Branum filed a citizens complaint against Grondin. The

---

[2]Some of the background facts are taken from the Court's Memorandum and Order Denying the City of Southgate's Motion to Dismiss or for Summary Judgment.

[3]The parties filed voluminous papers. The case can be distilled down to a few key facts which render summary judgment in favor of any party inappropriate as will be explained.

2

city's police department began an internal investigation which apparently included videotape interviews with Kalaska and Cassette. Grondin was on "departmental probationary status" at the time of the incident because of a no contest plea to charges of domestic violence and assault and battery. The Michigan State Police also undertook a criminal investigation regarding the incident but ultimately recommended no charges be filed.

On December 10, 2004, Southgate Chief of Police Lawrence Hall (Hall) wrote to the Wayne County Prosecutor's office, enclosing the videotapes and requesting a review of the case. On January 25, 2005, the Wayne County Prosecutor's Office notified Hall that no criminal charges would be filed due to a lack of sufficient evidence.

In late December, following the internal investigation, the Southgate police department issued a proposed notice of termination to Grondin. The notice was the subject of a Public Safety Commission meeting on February 9, 2005. The Commission, however, declined to adopt the police department's recommendation to terminate Grondin and instead recommended that he receive training.

On February 10, 2004, Hall wrote to the Mayor of Southgate, expressing his disagreement and disappointment with the Commission's decision, noting that the Commission did not review the videotapes and pointing out other perceived shortfalls in the decisionmaking process.

On February 11, 2005, the Mayor wrote Grondin, noting the police department's recommendation for termination and the Commission's decision for training. The Mayor, however, declined to adopt either recommendation and instead issued Grondin a five day suspension (on days of his choosing) without pay. Grondin was allowed to

3

use vacation days for the suspension.

On February 14, 2005, Hall wrote the Mayor expressing his "formal objection to your action in this matter" and explaining his belief that the discipline was no more than a "wrist slapping."

On August 1, 2005, Branum filed suit against Grondin, the Mayor (later dismissed) and the City for violations under § 1983. The City then filed a motion to dismiss or for summary judgment on the grounds that Branum has not and cannot make out a claim for municipal liability under § 1983 because the City investigated the matter and disciplined Grondin. The Court denied the motion. See Memorandum and Order Denying the City of Southgate's Motion to Dismiss or for Summary Judgment, filed March 29, 2006.

### III.  Legal Standard

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson

4

v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party."  Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).  As another United States District Court Judge has observed:

> [T]he mere existence of a dispute over ultimate facts to be inferred does not preclude summary judgment.  In that situation, the court, instead of automatically denying the motion, must decide the legal question whether the dispute is genuine, i.e. whether an inference adverse to the moving party is sufficiently plausible that it could reasonably be drawn by a jury.

William W. Schwarzer, "Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact," 99 F.R.D. 465, 487 (West 1983).

5

## IV.  Analysis

### A.  Federal Claim Under 42 U.S.C. § 1983[4]

Section 1983 on its own creates no substantive rights; rather, it is a vehicle by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  "To successfully establish a claim under § 1983, a claimant must show that he or she was deprived of a right secured by the Constitution and the laws of the United States by one acting under the color of law."  Ahlers v. Schebil, 188 F.3d 365 (6th Cir. 1999) (internal citations omitted).

### B.  City of Southgate's Motion for Summary Judgment

#### 1.  Municipal Liability Under § 1983

A political subdivision is liable under § 1983 if its official policies or informal customs cause a constitutional violation.  Heflin v. Stewart County, Tennessee, 958 F.2d 709, 716 (6th Cir. 1992).  A governmental entity may have liability for the same actions for which public officials enjoy qualified immunity.  Barber v. City of Salem, Ohio, 953 F.2d 232, 237-38 (6th Cir. 1992).

In order to state a claim against a municipality under § 1983, a plaintiff must

---

[4] Section 1983 provides, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

6

show that the municipality, through custom or policy, caused the alleged constitutional

violation. Monell v. Dept. of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d

611 (1978). A municipality cannot be vicariously liable under § 1983 for a constitutional

violation caused by an employee or agent. Id. at 694, 98 S. Ct. at 2037. Rather, a

municipality can be liable under § 1983 when the government custom is "so permanent

and well settled as to constitute a custom or usage with the force of law," Davenport v.

Simmons, 192 F. Supp. 2d 812, 824 (W.D. Tenn. 2001), or when the government's

official policy is the "moving force of the constitutional violation." Monell at 694, 98 S.

Ct. at 2037-38. See also Pembaur v. City of Cincinnati, 475 U.S. 469, 106 S. Ct. 1292,

89 L. Ed. 2d. 452 ("municipal liability under § 1983 attaches where–and only where–a

deliberate choice to follow a course of action is made from among various alternatives. .

. .").

In order to show the existence of a custom or policy for purposes of municipal

liability under § 1983, the plaintiff must plead specific facts in support of the claim; the

plaintiff may not merely state conclusory allegations. Culberson v. Doan, 125 F. Supp.

2d 252, 263-64 (S.D. Ohio 2000).

## 2. Application

The City's motion is virtually identical to its previously filed motion to dismiss or

for summary judgment. The only notable difference being is that because the parties

here engaged in discovery, certain background facts have been fleshed out particularly

with regard to the disciplinary process of police officers.

The City again argues that there is no evidence of an unconstitutional policy or

custom within the police department. The City points to Hall's testimony that the police

7

department has a mechanism in place to stop wrongful police conduct, i.e. the use of excessive force, and that the police department's policy was followed as evidenced by the recommendation to terminate Grondin.  This argument misconstrues the nature of Branum's claim against the City.  Branum does not claim that the police department itself acted wrongfully or has an unconstitutional policy or custom.

As stated in the Court's prior order, Branum

claims that the City, through the Mayor and other officials, condoned Grondin's behavior  Branum alleges that the City, though the Commission Mayor's office, has a policy or practice of not adequately or meaningfully investigating excessive force complaints and not imposing meaningful discipline on officers, particularly after the police department recommends termination.  In other words, Branum takes issue with the City's execution of its policies regarding excessive force which she says has resulted in an informal pattern/practice of essentially tolerating the use of excessive force resulting in the deprivation of constitutional rights.  Notably, Branum alleges, in the complaint and in her papers, that Grondin's treatment was not an isolated incident; other police officers are alleged to have been disciplined by the Commission and Mayor less harshly than police department recommendations.  Under these circumstances, the City cannot avoid liability at this stage in the case by simply relying on the fact that the officer involved was investigated and disciplined.

Discovery has revealed that the Commission is an advisory board and that the ultimate decision on police officer discipline lies not with the police department or the Commission, but rather with the Mayor.  Branum says that the City, through the Mayor, essentially has a policy of "inaction" against officers, like Grondin, who has a known history of discipline problems, by ignoring police department requests for termination.  According to Branum, the City violates § 1983 by tolerating officers who act in violation of police department policies.  Here, the fact that the police department recommended termination, the fact that the Mayor was aware of Grondin's history and the incident in question and instead issued a five day suspension with what appears to be generous

8

conditions is sufficient to survive summary judgment.  This is not, however, sufficient evidence for Branum to receive summary judgment.  The constitutionality of the mayor's actions, which are the City's actions, must be resolved by a trier of fact.

The City also argues that Branum's claim fails because she takes issue with the discipline imposed on Grondin, it cannot be said that the City's alleged wrong was the "moving force" behind her injuries as the discipline took place after the incident.  This argument also ignores the basis for her claim against the City.  Branum claims that the City has a policy of condoning police officers who act in violation of police department policies.  But for this policy, Branum claims she would not have been injured.

### C.  Grondin's Motion for Summary Judgment

#### 1.  Qualified Immunity - Excessive Force

Grondin says that he is entitled to summary judgment based on the doctrine of qualified immunity.  This doctrine allows a governmental official sued in an individual capacities to be free from liability on a plaintiff's claim for civil damages unless its actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).  Qualified immunity gives a police officer broad protection because the doctrine protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).  To prevail against a qualified immunity defense, a plaintiff must first demonstrate that the defendant violated one of plaintiff's constitutional rights.  Wilson v. Layne, 526 U.S. 603, 609, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999).  The plaintiff must then show that the constitutional right was "clearly established."  Gragg v.

9

Kentucky Cabinet for Workforce Development, 289 F.3d 958 (6th Cir. 2002).  The

question of whether an allegedly violated right is clearly established is determined by

asking whether "a reasonable official would understand that what he is doing violates

that right."  Id., citing Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L.

Ed. 2d 523 (1987).

Here, Branum claims that Grondin violated her Fourth Amendment rights to be

free from excessive force.  In Graham v. Connor, 490 U.S. 386 (1989), the U.S.

Supreme Court articulated the standard required to determine whether the force used is

reasonable under the Fourth Amendment.  The Supreme Court noted that such a

determination "requires a careful balancing of 'the nature and quality of the intrusion on

the individual's Fourth Amendment interests' against the countervailing governmental

interests at stake."  Id. at 396 (internal quotation and citation omitted).

A bright-line test is not employed to determine what is "reasonable" under the

Fourth Amendment.  Rather, the Court must pay careful attention to the facts and

circumstances of each case, including "the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or others, and whether

he is actively resisting arrest or attempting to evade arrest by flight."  Id.  The

reasonableness of a use of force is judged from the perspective of a reasonable police

officer on the scene.  Id.  "The question is whether the officers' actions are 'objectively

reasonable' in light of the facts and circumstances confronting them, without regard to

their underlying intent or motivation."  Id. at 397.  This calculus takes into consideration

"the fact that police officers are often forced to make split-second judgments – in

circumstances that are tense, uncertain, and rapidly evolving – about the amount of

10

force that is necessary in a particular situation." Id. "Not every push or shove, even if it may later seem unnecessary in the peace of the judge's chambers, violates the Fourth Amendment." Id. at 396 (internal quotation and citation omitted).

### 2. Application

Here, Grondin says that the facts clearly show that his actions were reasonable. He says that Egnatowski's actions[5] gave him probable cause to believe an assault against Schmidt had been committed and that Egnawtowski posed a threat to others. He also says that Branum's action in preventing him from entering the home gave him reasonable concern for his safety and he was therefore justified in using force.

The relevant question, then, is whether a reasonable officer on the scene could have believed Grondin's use of force against Branum under the circumstances was unlawful. Grondin's subjective intentions are irrelevant. The problem with Grondin's argument is that the propriety of his actions are the subject of reasonable dispute. Indeed, both Cassettee and Kalaska, the other police officers at the scene, have stated that Grondin's actions were not entirely proper. Cassette testified at deposition that he did not see any reason for Grondin to have entered the home; however he also testified that Branum was interfering with Grondin and that he would have arrested her.[6] Kalaska testified at his deposition that Grondin's conduct was "unbecoming of a police

---

[5]Grondin goes into detail regarding Branum's troubled and apparently abusive relationship with Egnatowski. These details, even if true, are not relevant to the question of whether Grondin acted reasonably on the day and at the time in question.

[6]In a recorded statement to Hall, Cassettee also stated that he would have arrested Branum and that Hall responded that was not the answer he (Hall) wanted to hear. He also stated to Hall that Grondin was not justified in striking Branum, but testified differently at deposition.

11

officer."

Based on the record, it cannot be said that Grondin's actions were reasonable as a matter of law such that he is entitled to qualified immunity.  Thus, he is not entitled to summary judgment.  By the same token, it cannot be said as a matter of law that his actions violated § 1983.  As such, Branum is not entitled to summary judgment.  The reasonableness of Grondin's actions under the circumstances must be determined by a trier of fact.

**SO ORDERED**.


 s/Avern Cohn                                    
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  February 7, 2007


I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 7, 2007, by electronic and/or ordinary mail.


 s/Julie Owens                                   
Case Manager, (313) 234-5160

12